Good morning. I'd like to reserve two minutes of my time for rebuttal. The main issue in this case is whether the Board's adverse probability determination is supported by substantial evidence. Petitioners argue that it's not supported by substantial evidence and argue that it should be reversed. The reasons cited by the Board in denying and finding them not credible are not... You really need to keep your voice up a little bit. I apologize, Your Honor. Okay. The Board in denying and finding the petitioner is not credible look to inconsistencies between their oral testimony and written testimony. A review of the record shows that the written testimony did not contain complete translations of the statements. It's possible and obvious from the oral testimony that the petitioners assumed that all of their testimony was included in the written statements. However, it was not. Their oral testimony was consistent between the two petitioners during direct and cross-examination. One of the things that the Board faulted the respondent, the female respondent, for example, was because initially she said that when she was in Tbilisi, Georgia, she never went out of the house. Her statement actually was that when she first got to Georgia, she could not go out of the house because she had frostbite. They did not testify that she went out of the house... What? Excuse me? Frostbite. Frostbite. Frostbite. Frostbite, yes. I thought you said crossfire. No, frostbite. I apologize for my pronunciation. She later testified that she went to the refugee community with her husband and that there she suffered like an incident where she was assaulted by a woman on account of her ethnicity. The Board thought that there was an inconsistency between her two statements. However, there is no inconsistency because at some point in time she had to go out of the house, whether it was to go to the refugee center or to leave the country, for example. Also, the Board found fault with her statement or her husband's statement in terms of the assault itself at the refugee center. At the refugee center, she said that the woman tried to assault her and that her husband intervened and prevented her from being physically assaulted, physically hurt. However, the husband indicated that Mrs. Gaworkova suffered a lot from this incident and that she suffered injury. He didn't specify the type of injury that she suffered. We would argue that, you know, because it was not made clear during the proceedings that the suffering that he's referring to is emotional suffering from having someone accuse her of having caused someone else's death when she had nothing to do with it. And another incident that the Board finds fault with is the fact that at one point in time, the female petitioner makes a statement that we were severely beaten and attacked. She's using the plural sense and not claiming that she herself was hurt but that her family was hurt because later on she explains that she herself was not hurt, that only her husband was hurt. Also, the biggest thing was that the Board found fault with the fact that some of the incidents were not mentioned in the written statement. Again, typically this Court has found that not mentioning everything in the written statement is not going to prevent an applicant for testifying to certain events during the asylum proceedings. This Court has previously stated that it is well settled that an applicant's testimony is not per se lacking in credibility simply because it does not include details that are not set forth in the asylum application. Who prepared that application? Your Honor, there's the name of a person but it's not clear from the record what relationship that person had to them and it's not clear that it was not an attorney that prepared it. So it's not clear who it was or their level of expertise. Later on during the proceedings, a supplemental declaration was submitted to the Court and there's a signature from the female petitioner, it appears, but it does not contain a certification of translation. So it's not clear that it contains all of the details or that the female responder would have been aware of all the events detailed in there. During the oral testimony, the petitioners appeared to be surprised. How do you explain the inconsistencies cited by the IJ and the BIA between her testimony and her application? Your Honor, through the testimony, it appears that they believe that all the details were included in their statements. They assume that they were, and when they testified to those events in court, it appears that they assumed that they had been included in the original application or the statement that was later submitted to the Court. Unfortunately, without a certification of translation, it's not really clear that they would have been aware of the extent to which anything might have been omitted. And during the hearing, when the judge asked for clarification as to why those things were not in there, you know, the male respondent says, the male petitioner, I'm sorry, says, what do you mean they're not in there? You know, I thought they were in there. And the attorney for them at the time assumed that those things were also in there. So he himself doesn't appear to have been clear as to the completeness of the written statements. And who was that attorney? I believe his name was Mr. Rose, Mr. Rose, Rafael Rose, I believe. Was he associated with you? Not at all, Your Honor. So, again, it seems as if they're being faulted for something that was beyond their control. In a sense, they relied on other people to prepare their written applications, and they assumed that everything was included. When they got to the court is essentially when they first discovered that it was not. Now, they filed their first asylum application in, I believe it was in 2000 or at the end of 1999? I believe it's around that time, Your Honor. I think there were proceedings in 2003. So I think around 2000 or 1999 perhaps is when they filed the asylum application to the district. And when did they arrive in this country? I believe it was 1999, Your Honor. And they arrived as tourists, Your Honor, and they overstayed their visas. 1999, Your Honor. So probably their application was filed sometime in 2000, and it was referred to the court in 2000 or 2001. All right. I'm going to say two minutes. Yes, sir. Good morning. May it please the Court, my name is Amy Fredrickson. I'm an attorney with the Department of Justice, and I represent the government in this matter. Petitioners are seeking review of a decision by the Board of Immigration Appeals finding them not credible and on that basis denying their applications for asylum withholding of removal and protection under the Convention Against Torture. The question before the Court, therefore, is whether the record compels the conclusion that the petitioners were credible where the Board articulated several discrepancies that are actually contained in the record and go to the heart of the petitioner's claim. There are three events that form the primary basis of the petitioner's claims. The first is interactions with the refugee committee, including an alleged attack against the wife and that they were denied aid on the basis of the wife's ethnicity. The second is an alleged attack on the husband by a neighbor, again because of the wife's ethnicity. And the third is an attack that occurred in Russia while they were living with the husband's brother. The Board pointed to several discrepancies with respect to the interactions with the refugee committee. The wife first testified that she went to the committee alone and that her husband did not bring her birth certificate with them and so they denied aid on that basis. She later testified that the husband brought her birth certificate with him when he went to the refugee committee alone and they denied aid because of her ethnicity. They refused aid on that basis. She then testified that she went with her husband and was recognized by the parent of one of her former students who began yelling at her and accusing her of causing the death of the Georgian children who were fighting in the Civil War. She only ever testified and she only said in her statement attached to her asylum application that she was yelled at. However, her husband, when asked by the immigration judge, was she injured, answered yes, she suffered a lot. And it appears from that statement that he testified that she was physically harmed, even though she testified that he jumped between her and the woman who was yelling at her to keep her from being harmed. This goes to the heart of her claim because it's the only incident where it was the wife, who's the lead applicant in this case, who was actually personally assaulted. In the second incident, they claim that her husband was attacked by a neighbor who came and knocked on their door and when he opened the door, hit him on the shoulder with a wooden stick. The board pointed to conflicting statements about whether they filed a police report. The wife first testified that they did not file a police report because it would be pointless, but then the husband testified that they did file a police report with the militia. There's also a conflict in the record as to whether or not or for how long the husband was hospitalized. Although the husband and wife both testified that he was hospitalized for about 10 days, there's a medical record that indicates that he was only hospitalized for two days. Particularly, whether they reported this incident to the police, which in his brief, the petitioners concede that this is a conflict, but argue that it's a minor conflict. Rather, this goes to the heart of the petitioner's claim because one of the elements for asylum requires that any harm that occurs happens either by the government or by an entity that the government is unwilling or unable to control. So by failing to file a police report, they fail to give the Georgian authorities the opportunity to protect them from the civilians who cause them harm. As such, the conflicting statements regarding the police report do in fact go to the heart of the petitioner's claim. Finally, the attack in Russia, there's conflicting evidence about whether the wife was home at the time of the attack. Although she testified that she was down the street with another relative and not home at the time the attack occurred, in her statement she submitted with her asylum application, she says that we were both severely beaten, indicating that she was home and actually suffered as a result of the attack. The petitioner argues that the court should not look at the discrepancies between the asylum application and the testimony in this case. However, this is not a case where the asylum application is a bare-bones application. Rather, the statement that was submitted with the asylum application is three single-spaced pages. It's a detailed description of the events that happened to the petitioners while they were in Georgia, but it still does not contain key elements of their claim. They submitted a second supplemental statement when they appeared before the immigration judge, but that again does not contain all of the details and contains several conflicts between their testimony. Additionally, there are conflicts between the husband and wife's testimony. So they did not both testify to the same events. Because the board articulated specific and cogent reasons for finding the petitioners not credible, the discrepancies are supported by the record and are at the heart of the petitioner's claim. The court should uphold the board's decision and deny the petition for review. Any questions for me? To what extent did the BIA consider the Catt claim? The board noted that the Catt claim was based on the same incredible evidence as their testimony and that there was no additional information indicating that the... Well, it was just one sentence, wasn't it? It was just one sentence. Yeah. The petitioners at no time... And did the BIA consider whether there was at least a 10% chance of future persecution? Again, well, the board considered and found that the petitioner's testimony was not credible, and because the testimony was not credible, although there was not documents in the record that indicated apart from the petitioner's not credible testimony that would indicate that they would be subject to a harm different from any other member of the Georgian population during a time of civil war. All right. Any questions? Any questions? Thank you. Your Honor, with regards to the evidences to the Catt, to any possibility of a Catt claim, the petitioners submitted documentary evidence in support of their claim that, based on their ethnicity, they could be subjected to persecution and torture in Georgia. The court... They were living for three years in Sochi. Is that in Georgia? Sochi, I believe, is in Abkhazia, Your Honor. Right. And they were living there without insight. The incidents they mainly referred to was like the incidents that they suffered in Georgia itself, in Tbilisi, when they moved there, and on account of their ethnicity. Their claim was that if they went back to Sochi or Abkhazia, rather, they would encounter discrimination and persecution there as well on account of the male respondent, male petitioner's Georgian ethnicity. So, again, there is evidence in the record that would support a claim for withholding or removal or commencing against torture. The items mentioned in terms of the police report, for example, the male respondent indicated that he reported the incident to the police. The female respondent indicated that it was useless to report it to the police because nothing was going to happen. That statement was also supported by the male respondent who said, like, we reported it to the police and nothing happened. And that just kind of shows the frustration in terms of explaining to someone, you know, why they didn't report it and nothing was going to happen. In terms of the injuries, again, that were mentioned by the respondent, the female respondent clearly indicated that she was not physically injured. The male petitioner indicated that she was injured but did not specify the type of injury that she suffered, and he also indicated that she suffered a lot from it. I would argue that what he's referring to is mental anguish from having experienced that incident. And, again, in terms of the Refugee Committee incident, the initial statement was that she never went out, and she explains that by saying she never went out because of the frostbite, and later on explains that she went to the Refugee Committee because she was seeking help from the Refugee Committee, only to have that encounter with a woman that accused her of being responsible for her son's death. We would argue that the record compels a reversal of the Boys Adversity Criminal Determination, and that this Court should remand the case for further proceedings. Thank you.  Thank you, Your Honor. And we'll take up Bidet number two. Ayala versus Petrosi.
judges: Pregerson, Rymer, Korman